Case number 21-1505, United States of America v. Larry Inman. Oral argument is not to exceed 15 minutes per side. Mr. O'Connor for the appellant. Good morning, Your Honors, and may it please the Court. I'm Assistant U.S. Attorney Chris O'Connor on behalf of the United States. I'd like to request reserving three minutes for rebuttal. Your Honors, the District Court committed error when it dismissed Counts 1 and 2 of the indictment after the jury acquitted the defendant of Count 3 because it failed to faithfully apply the clear issue preclusion law and principles that were at play that was established by the Supreme Court in this Court. In fact, the District Court failed to search the record and failed to determine whether a rational jury could have found the defendant not guilty of lying to the FBI without necessarily deciding that he did not intend to convey a quid pro quo of campaign contributions for his vote on the prevailing wage issue. Had the District Court followed the law, and particularly if you look at this Court's precedent in Frazier and Jenkins, the courts have done a searching review of the entirety of the record because the Supreme Court has said this is a very substantial burden, and it's the defendant's burden to establish issue preclusion. And the Supreme Court in its most recent decision on issue preclusion said that the courts must be guarded in its application of issue preclusion. Could you explain to us how a rational jury could find in the defendant's favor with respect to the Count 3 and nonetheless rule that the defendant is guilty of Counts 1 and 2? Yes, Your Honor. A complete review of the record would show at least three plausible reasons why the jury could rationally find the defendant not guilty of lying to the FBI without deciding the real issue on Counts 1 and 2, which is did the defendant corruptly intend to attempt to extort the union or solicit a bribe? First, the defendant's position at trial was that he didn't remember sending the key text messages at issue in the case. His first offense in this case was that he was so addicted to opioids and abusing alcohol on top of that that he had no recollection of soliciting the money from the union in those text messages. His testimony was he didn't recall sending the messages. He didn't. So when the FBI asked him if he had communicated with the union leading up to the prevailing wage vote, he said he didn't lie to the FBI because he couldn't recall sending the messages. He also testified that when he went back and looked at those messages, and even as of the date of the trial, he couldn't understand anything about those messages except for one thing. The very last part of the text messages where he said we didn't have this discussion. He clearly remembered why he said that. And so the crux of the defense in the case was I didn't lie to the FBI because I don't remember doing this. And so, therefore, the jury could say, well, perhaps the government didn't prove count three because everybody knows he communicated with Ms. Canada of the Carpenters Union. There was no genuine dispute. I mean, it's right there in the text messages that were introduced at trial. And, of course, the testimony of Ms. Canada and the lobbyist who received the other text message, those messages were indeed sent. He did communicate that. He did solicit money three days before the prevailing wage vote. So, really, the only issue in count three was did the jury believe that he didn't remember sending the messages and, therefore, didn't lie? And they rationally could have found that. Secondly, the government has the burden of proof, of course, and perhaps the jury simply found that the government failed to prove count three beyond a reasonable doubt on all the elements. And, you know, there are two key components to that possibility. Very rational because, first, the FBI didn't record the interview with Mr. Inman. And a key part of the defense, in addition to the defendant claiming no recollection of communicating, was that he was surprised. This was an early morning visit by the FBI at his home. They were there with a search warrant to obtain his cell phone. He testified that he had taken an extraordinary number of opioid pills the day before, that he was confused and surprised, and, therefore, the jury didn't have a recording of exactly what the agent asked him and how it was asked and exactly what the defendant said in response to those questions. On top of that, the defense made a very strong argument that the FBI agent, in his testimony, conceded that it's possible for people to forget text messages. Another key part of the defense was this was only two text messages out of the tens of thousands of messages that people send. And all of the data that the FBI found on the defendant's phone were talking about two messages. And so the agent agreed that it's possible sometimes people forget sending text messages. And so the defense attacked the FBI's theory and the way in which it conducted that investigation. And, third, there's a possibility that the jury misunderstood the materiality element of count three. The government has to prove that the false statements were material. And because the FBI had possession of those text messages before it interviewed the defendant, they knew at that point that he did communicate with her soliciting campaign contributions leading up to the vote. And so perhaps there was some confusion or uncertainty as to whether these false statements were material to the FBI's investigation. Any one of those possibilities would rationally explain why the jury could acquit him of count three. Now, was it necessary for counts one and two to prove? Is it your position that it was not necessary to prove a false statement to the FBI in order to convict under one and two? That's correct, because the elements of those offenses are obviously very different than the elements that the government must prove on a false statement charge. And the way that the defendant was charged with making a false statement, it was not that he falsely denied trying to extort the union. He was not charged by the grand jury with false statements. What are the acts that the government would contend constitute extortion or attempted solicitation of a bribe that would be apart from this false statement to the FBI? Well, to be clear, the government at trial did argue that one piece of evidence of the defendant's corrupt intent was the lie to the FBI several months later. What was the other evidence? There was, first, the actual text messages themselves. And the text messages themselves indicate that he is proposing a quid pro quo. If you give me more campaign money, then I'm in a position to vote no, consistent with what the union wanted him to do. The quid pro quo is communicated in writing in text messages that end with, we didn't have this discussion. But even before he sent those text messages to the carpenters union, he actually a few days earlier had reached out to the electricians union and had a conversation about campaign money and the fact that the prevailing wage vote was coming up in a few days. And when he didn't get any money from the electricians union, that's when he sent the text messages to the carpenters union. So no mistake here. The defendant is actively soliciting campaign money in exchange for his vote on prevailing wage. The timing of those messages, merely three days before he was to vote on the issue, he solicits the union to max out. We all need some more help. Get us help. They'll send you the money back. It's not worth it for the money that you've given so far. In the hours before he was asked to cast his actual vote on prevailing wage, the jury heard evidence that he communicated with the speaker's chief of staff about the need to raise money for his re-election campaign and how important that was to him. And immediately after the defendant voted yes to repeal prevailing wage, the jury heard that he immediately started soliciting campaign contributions from the winning side. There's lots of evidence that the defendant had corrupt intent. It wasn't just the lie to the FBI. It was the false narrative for why he changed his vote against the union that was absolutely not true. The other representative came in and said, I didn't need anybody to switch a vote for me. I was a no all along. The speaker pro tem confirmed that that representative was always opposed. So we have a false narrative that the defendant creates when he doesn't get the campaign contributions and then he doesn't vote with the union. He creates a false cover story. And then after the fact, when he's confronted by all of this, by the union, by Ms. Canada, in that recorded conversation with the FBI, he sought to reassure Ms. Canada that nobody else got those messages. That was just between him and her. And he apologized and said he didn't do it right, didn't do it properly. And in fact, he did what he said he would do in his June 3rd text messages. He returned the campaign contribution that the union had sent him. It wasn't worth it to him. And so, Your Honor, there's ample evidence in this case that a jury could find that the defendant had the corrupt intent to propose this illegal quid pro quo through the other evidence in the trial. And at a retrial, the only evidence that wouldn't come in would be, you know, he committed a crime and lied to the FBI because he's been acquitted on that count. That's the only difference. And so, therefore, when the district court failed to recount all of that evidence, the district court simply changed the rules. The district court said, I recognize that there are these cases on issue preclusion, but then didn't apply the rules. Instead, the district court pivoted and said, we need to look at this case from a different perspective, from the lens of a First Amendment analysis and federalism, and failed to do the test that's required by this court and the Supreme Court. Do you think First Amendment analysis is appropriate here? You're saying it's not? Well, the First Amendment obviously is relevant in terms of whether the government properly pursued these charges, but it has no application to the issue preclusion test. If the government had come in and charged the defendant with something that's clearly permitted by the McCormick decision or Evans or Terry, this court's pronouncements in Terry, then the First Amendment would be implicated, and that would be implicated at a different stage of the proceedings, a motion to dismiss or a Rule 29. But the issue preclusion test is not a Rule 29 sufficiency of the evidence test, and that's what the district court turned this into. It turned this from an issue preclusion analysis into, well, if the government now can't prove that he lied to the FBI, then I find, in place of the jury's role, that the government can't prove its case against the defendant. That's because the court created this new plus factor, which appears nowhere in McCormick or Evans or Terry or Abbey. It's not supported by the law. Essentially, the district court's saying, if you have a quid pro quo offer by a state legislator to trade his vote for a campaign contribution, that's apparently legal unless there's something else, unless there's another crime that he committed, unless there's some other bad act like lying to the FBI. That's clearly not the law of McCormick and Evans and Terry and Abbey. And so the district court not only changed the rule, it avoided the issue preclusion analysis. It created its own analysis. It shifted the burden to the government to prove that it had sufficient evidence without count three to prove the corrupt intent. And the district court even acknowledged, it's possible that the jury might have acquitted the defendant because he lacked the mens rea for the crime. Right there is the end of the issue preclusion analysis. That alone is what the Supreme Court says the guarded application requires. When you find that it's possible the jury concluded that he simply didn't lie because he had forgotten. He didn't intentionally lie. He made a false statement, but he didn't know he was making a false statement. That's the end of the analysis. The government is allowed to retry counts one and counts two. I see my time is up. Thank you. Good morning, honorable judges of the Sixth Circuit Court of Appeals. My name is Chris Cook. I'm an attorney from Traverse City, Michigan. I represent Larry Inman, who is the defendant in this criminal case. And I'd like to thank the court and the court staff for the diligence and the work they've put into this case. Your honors, Judge Yonker was absolutely correct when he dismissed counts one and two based on the jury's finding that my client did not lie to FBI agent Ashcroft during a two-hour interview that took place at 630 in the morning on August 1st in his 2018 in his home. My client spoke freely with agent Ashcroft. He answered every question. And agent Ashcroft testified about what my client said during the course of that interview. And those statements made by my client were part and parcel of one of the central issues, as the government said in its closing argument, of this case, as to whether or not my client intended to solicit additional campaign funds in exchange for his vote. There's no way that my client could be retried on counts one and count two when the jury thought he was not guilty of a false statement to the FBI. The court issued four basic reasons why that's true, but I want to focus for a minute on the issue of preclusion that my client is entitled to under the double jeopardy provisions of the Fifth Amendment. My client, according to agent Ashcroft, on August 1st of 2018, claimed that my client lied when he told agent Ashcroft that he was not engaged in vote selling, number one. Number two, his district was not interested in prevailing wage and voted that way. Number three, he did not cash a $4,000 check when it was provided to him prior to the vote because he was not sure as to which way he was going to go on prevailing wage. He returned that check. Four, he denied asking Lisa Canada for money. He denied asking Lisa Canada for money leading up to the vote. And he also confirmed to agent Ashcroft that he had been truthful during the course of that entire interview. Those were the central issues that the agent Ashcroft introduced in front of the jury in an effort to establish, the government's effort to establish that my client lied, made a false statement to the FBI. So if those, now those six issues, and there's more than just that, and I pointed out in my brief, but those six specific issues that the jury said, no, Larry Inman did not lie to agent Ashcroft when he denied doing these things and he made these statements, those are facts that are precluded now from a collateral attack in a second proceeding. The reason that the jury might have thought that he didn't lie, or apparently did think that he didn't lie, the reason that they thought that is not material here? I don't think that you can look behind the jury verdict and try to reason out why they did what they did. I think we have to look at the way the jury ruled in its verdict of not guilty and look at what the government said my client lied about. To suggest that, well, he doesn't have the mens rea, well, then he doesn't have the mens rea to do count one or count two either because the only evidence of a claim violation of counts one and count two are two text messages. That's all they have. And these arguments that the government launches about, well, the jury could have said this, they could have done that, they might have thought Larry Inman forgot when he sent these text messages, might work if my client told Agent Ashcroft both on August 1st, 2018 and when he went in for a second interview in December of 2018. He told the exact same set of facts to Agent Ashcroft on August 1st in December and in front of the jury and the jury found he was telling the truth. So the truth should prevail in this case. What we know is what's on the record. Why aren't the text messages alone enough for a rational jury to convict under counts one and two? Well, first of all, my client denied the interpretation of the text messages that was given. Well, I understand that, but the text messages are there for the jury to read for themselves regardless of what your client says he meant about the text messages. Yes, Your Honor, that's true. And they also were there for the jury  that my client did not lie to the FBI. So, I'm sorry, I didn't answer your question. That's how it's collaterally stopped. Those same two text messages were proof that the government advanced that my client made a false representation of the FBI. So they had that, they've already ruled on that information because of the fact that my client... What's the basis of your contention that a false statement to the FBI is an essential element of counts one and two? Well, I don't think a false statement to the FBI is an essential element of counts one and two, but... And how can it be precluding those counts from being retried? Well, I think from a logical perspective and using collateral estoppel, if my client testified that I did not intend to solicit additional campaign funds from Lisa Canada in exchange for my vote and the jury says that's true, how can then you go say in count one but you did attempt to solicit campaign funds from Lisa Canada? I mean, it's an absolute logical case, but when you look behind that and look at what the jury had to conclude when they rejected the arguments by the government as to these various issues that they claimed my client lied about, you're also precluded on a collateral estoppel basis from attacking those. I mean, there's no way you can... I don't think the decision just stated differently. How is the jury's verdict a decision that it is true that he did not intend to solicit what he said? Well, Your Honor, I don't think that's what we're saying. I don't think that's what we're saying. We're not saying that the jury's verdict resolved the ultimate issue of whether or not my client had an intent to unlawfully solicit or extort money. What we're saying is there are facts now that have been established on this record that if you go forward with a second prosecution, you have to collaterally attack those facts. Or my client said, I didn't do that to Ashcroft. I didn't engage in illegal vote selling. And the jury said he didn't lie. So the truth has to stand for something. I mean, that has to be considered true now, Your Honor. And so how can you say... I'm sorry. How do you respond to these other possibilities of the jury... I mean, the... Not just that what he said wasn't true, but that he intended to... convey a message that it wasn't true and he knew it wasn't true at the time. So how do you respond to that argument that the jury may have fought his defense that he was really out of it and didn't repent for anything? Well, Your Honor, because if you look at the text messages by themselves and the statements made by Agent Ashcroft as to what Larry Inman said on August 1st and my client never took the stand, I think then you could argue that, well, this evidence that Cook introduced about opioid addiction and what kind of state of mind he was in when he was sending these text messages and what kind of state of mind he was in when he was asked questions by the FBI. Yeah, maybe so. Maybe so. Maybe in that case we're going to say he's not guilty of count three because he was out of it. But he testified the same way in front of the jury. It's not an isolated situation where you look at just the text messages. He took the stand, was subject to cross-examination by the government, and the jury said... And he repeated the same things on the stand that he said to Ashcroft. The same things. And the jury said he didn't lie to the FBI. So how can you now then impeach... Now you're going to be impeaching his testimony from the stand. And if we get sent back for retrial... This is a follow-up question to that. How do you handle the law of the case doctrine? We've already established that he didn't lie to the FBI on August 1st of 2018 when he said I was not engaged in illegal vote selling. Don't I get an instruction to the jury? It's the same case. It's the same set of facts. We've already got a decision from the jury that he's not guilty of count three. So how do we try this in front of the jury now if it goes back there? Because I'm going to ask Judge Yonker to give me an instruction that says Larry Inman I rule as a matter of law that Larry Inman was not engaged in vote selling. He did not ask Lisa Canada for money leading up to the vote. He denied being engaged in illegal vote selling and he told the truth throughout. See those are the things that have been established by the verdict of the jury. So I don't think you can say well let's look behind what the jury might have decided and why they decided that. We have to look at what the jury did decide based on the allegations and the jury decided that my client told the truth. And I think there's a real telling The only thing that you decided was that your client didn't knowingly and intentionally tell untruths. But what difference does that make? Everybody's going to have thought he was lying from the stand in terms of well the jury could have believed that he was out of it that morning. I agree. I agree. They could have done that. And that would be fine. That argument I think might prevail if my client had not testified to the very same things at trial. Your Honor because he confirmed all those same things he said to Ashcroft. He never changed his story. He was never impeached. He said to Ashcroft I didn't engage in illegal vote selling. He told the jury I didn't engage in illegal vote selling. And the jury said he told the truth to Ashcroft. But nobody charged him with any kind of perjury as a result of what he said on the stand during the trial. The jury could very easily have disbelieved everything he said on the stand. But the jury could have believed at the same time it seems to me that when he talked to the FBI in the early morning hours when he was completely out of it when he said he was completely out of it that he didn't knowingly and intentionally make false statements to the FBI. The fact that now he testifies consistently with that on the stand is all to his benefit no doubt during the criminal trial and I don't see why the jury would have to even make that comparison. Well I think that was the government's argument all along. If you look at the Your Honor if you look at the government's argument all along that's exactly what they're telling the jury. You know he says Agent or government's attorney O'Connor said but when the FBI asks him a series of questions that goes to the heart of this case about whether he ever communicated with the Carpenters or with Lisa Canada in the days leading up the time leading up to the death of Lisa Canada for any amount of money before the prevailing wage vote. He denied it. He denied it. He denied it. There wasn't one question. It was a series of questions and he lied repeatedly during that interview. But the government said he didn't lie repeatedly during that interview. He told the truth during that interview. I guess I'm having trouble making the leap from he didn't knowingly and intentionally lie and he told the truth. I'm not sure I see why those two things are coterminous. And why did the jury agree with the verdict? It undermines your point. The verdict means the jury believed everything he said on the stand. Or believed that he was telling the truth. On the stand. On the stand, my client told the jury the same things he told Ashcroft. The truth has to count for something. The jury said he didn't lie. If he didn't lie, what's left? He told the truth. He told the truth on August 1st. He told the truth from the jury. You're confusing did not intentionally tell untruths with he told the truth. There are two different  that. I don't think so, your honor, when it comes to the fact that he testified the same thing from the stand and the jury affirmed that. I don't think you can take a look at the hung verdicts and draw any conclusions from them in our legal system. The hung verdict means nothing. So we have to look at the verdict of the jury. To make it simplistic, if you asked Johnny if he took cookies out of the cookie jar and said no, I didn't do that, and that is true, I didn't do that, how can you then try to convict him of taking cookies out of the cookie jar? That, to me, is an absolute dichotomy in an analysis from a logical perspective. So I think that that's the biggest issue in the case. And I don't think that you can continue to split hairs over that. I think the jury found that my client did tell the truth. To me, there's not a big difference, or any difference between denying the jury finding that he told the truth when he denied illegal vote selling, and he testified to that on the stand as well. When your time's up, and I do have one other question, this notion that we need some quid pro quo plus, or do you need something extra, do you want to do that? I don't think that Judge Yonker created an extra element, as the government argues. What Judge Yonker was doing was differentiating between those cases that found quid pro quo solicitation versus those cases that did not. There was something more in each one of those cases other than just the transmission of the quid pro quo. I think that's the rationale for his analysis, rather than making it a separate element of the crime. Thank you.   you have further questions. I do not. No. Thank you. The jury was asked to make a comment on the quid pro quo  The jury made a very narrow determination on count three. Count three did not charge the defendant with lying about the ultimate issue in counts one and two. Count three simply asked the jury to decide did the defendant lie to the FBI when he denied having communications with Lisa Canada about campaign contributions leading up to the vote. And did he specifically deny soliciting 30,000 dollars from Lisa Canada in those communications. The jury was not asked whether it believed any of the other testimony that the defendant offered at the trial that Mr. Cook relies upon in trying to find issue preclusion. And when counsel concedes that the jury could have simply decided that his argument was right at trial that his client didn't remember sending those text messages when he was asked about them by the FBI, there's no issue preclusion. That's the end of the story. If there's one possible rational explanation, and that certainly is one, why the jury would acquit on count three, then the government is entitled to a retrial on counts one and two. The record is very plain on that point. And that, of course, is the   criminal cases. But I think it's also important for this court to address the other issue raised by the court. And that is the general rule. The  rule is that the government should be held to the burden of proof established by the Supreme Court in McCormick, and that is proving a quid pro quo. Did the defendant offer to exchange his vote on prevailing wage for a campaign wage?    offer to exchange his vote on prevailing wage for a campaign wage? Did the defendant offer to exchange his vote on prevailing wage for a campaign wage? And that is the general rule. And it's very important for this court to affirm that not only the standard elucidated in the McCormick decision, but also to affirm that this court's decision in Terry remains valid, which is there's nothing special about campaign contributions. You can't hide behind a campaign contribution to solicit a bribe. And the government's burden is very high. It's very high. It's proving a quid pro quo. And that's exactly and only what the Supreme Court and this court has put the government to prove in campaign contribution cases. This court needs to be very clear that at a retrial, there is no plus factor. There is nothing to be added to the analysis. It's simply the jury instructions that were given at the first trial by the district court. Did the government prove the quid pro quo? Thank you. Thank you, folks. I'll take some questions.